UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

IN RE:

STEVE GLEN KRUSE and　　　　　　　　　　　　　Case No. 14-15001-7
CAMILLA LYNN REDMOND KRUSE,

　　　　　Debtors.

## MEMORANDUM DECISION

### Procedural History

This case was originally a chapter 13 that was converted first to a chapter 11 and then to a chapter 7. The United States Trustee filed a Motion to Dismiss Pursuant to Section 707(b). The Debtors object.

### Facts

Debtors Steve and Camilla Kruse filed a voluntary chapter 13 petition on November 26, 2014. The Debtors own a house near Cumberland, Wisconsin valued at $325,000. It is subject to a mortgage claim of $527,040.54. The Debtors concluded that their unsecured debts (including the undersecured portion of their mortgage) made them ineligible for chapter 13 relief and converted to chapter 11 in January 2015.

The Debtors' schedules in the chapter 11 disclosed monthly income after payroll deductions of $10,318.28 and expenses of $7,339.87, leaving $2,978.41 in net monthly income. Shortly after filing their schedules, the Debtors completed and filed a Chapter 11 Statement of Current Monthly Income that listed monthly income of $16,264.55.

The U.S. Trustee filed a Motion to Convert or Dismiss the chapter 11. The motion referenced approximate income of $18,000 per month. It also drew information from the operating reports that monthly expenditures seemed to equal or exceed the income. The U.S. Trustee argued there was excessive consumer spending on dining, entertainment, gifts, clothes, travel, horses, and other consumer goods, leaving nothing for creditors. This pattern of spending was, according to the U.S. Trustee, "cause" for dismissal or conversion under 11 U.S.C. § 1112(b)(4)(A).

After failing to originally include certain income, the Debtors had significant work to complete on their tax returns, including amending previous returns and manually re-entering three years of financial data lost due to a computer failure. The Debtors concluded they did not know how long it would take to finish their tax returns or propose a plan. Although they filed an objection in response to the Motion to Convert or Dismiss, at the hearing the Debtors told the Court they did not oppose conversion. The Court then converted the case to a chapter 7.

The Debtors have since completed amending their tax returns. The Debtors owe delinquent taxes of $137,348.38 to the Internal Revenue Service.

A more recent Form 22A filed in September 2015 lists negative net monthly income—a deficit—of $5,928.34. This amount is skewed because it deducts $4,248.88 per month for payment related to the Cumberland house. However, the Debtors are making no such payments and have not for a long period of time.

The Debtors moved to Arkansas in March 2014. They allowed their friends to live in the Cumberland house rent-free. The Debtors stopped making payments on the Cumberland house in July 2014.

The holder of the mortgage on the Cumberland house obtained relief from stay and filed a foreclosure action. The action waives a deficiency judgment. The Debtors do not resist the foreclosure. If the foreclosure action is completed as currently pleaded, there would be no unsecured claim on the Cumberland house to include in the bankruptcy. This would reduce the unsecured claims to a level where the Debtors may be eligible to file a chapter 13.

The U.S. Trustee now asserts that dismissal under section 707(b) is warranted for abuse. The U.S. Trustee argues that: (1) without the expenses related to the Cumberland house, the presumption of abuse would arise; (2) the totality of the circumstances warrants dismissal for abuse; (3) the Debtors have a sufficiently high monthly income to support paying off creditors and, therefore, should not receive a chapter 7 discharge; and (4) the Debtors have engaged in excessive consumer spending that, if reined in, would allow them to make payments to creditors.

The Debtors do not dispute that there is substantial monthly income that would permit some repayment to creditors. Based on their income, the Debtors would not have been eligible to file for chapter 7. Nonetheless, the Debtors argue the motion to dismiss is improper and should be barred by judicial estoppel. The Debtors first argue that because the U.S. Trustee filed the Motion

3

to Dismiss or Convert their chapter 11 to chapter 7, the Court should not permit the U.S. Trustee to bring a motion to dismiss the chapter 7. They next argue that section 707(b) does not apply to this case because the Debtors did not originally file under chapter 7. Lastly, the Debtors argue the totality of the circumstances does not show abuse.

## Discussion

### A. Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and (J). The Court may enter final judgment. 28 U.S.C. § 157(b)(1).

### B. Judicial Estoppel

Judicial estoppel is designed to prevent "the perversion of the judicial process." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013). It protects the court from litigants "who seek to prevail, twice, on opposite theories." *Id.* The doctrine is a "matter of equitable judgment and discretion." *Id.* Despite the flexible nature of the doctrine, the Supreme Court has identified three factors to guide the court:

> (1) whether a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) (internal quotations omitted)). The cases reiterate that

4

these three factors are not a formula or prerequisites in any way, and other considerations may apply. *New Hampshire*, 532 U.S. at 751. Because of the flexible nature of judicial estoppel, neither *Grochocinski* nor *New Hampshire* elaborate on what exactly satisfies these factors. Some circuits have developed stricter tests. *See, e.g., Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 777-78 (3d Cir. 2001) (requiring "irreconcilably inconsistent" positions, changing position in bad faith, and tailoring the use of judicial estoppel to "address the affront to the court's authority or integrity"); *Johnson v Oregon*, 141 F.3d 1361, 1369 (9th Cir. 1998) ("If incompatible positions are based not on chicanery, but only on inadvertence or mistake, judicial estoppel does not apply."); *Folio v. City of Clarksburg*, 134 F.3d 1211, 1218 (4th Cir. 1998) (requiring the party to be estopped to have acted "intentionally, not inadvertently" for judicial estoppel to apply). No specific test has been adopted in this Circuit.

    1.    <u>Whether the U.S. Trustee Took Clearly Inconsistent Positions</u>

The Debtors argue the U.S. Trustee has taken inconsistent positions by filing a motion to dismiss or convert to chapter 7 and then—once the case was converted to chapter 7—filing a motion to dismiss the case for abuse. The Debtors argue the U.S. Trustee could have limited its first motion to a motion to dismiss, and that by including the alternative option to convert to chapter 7, it would be improper to now permit dismissal. The Debtors suggest the U.S. Trustee should have given them "notice of his intentions to possibly file a motion to dismiss." The Debtors admit they are not using and have not used

5

their income to satisfy debts. The Debtors fail to argue against this as a basis for dismissal. Rather, they argue that because the earlier motion was in the alternative, their conduct is acceptable and dismissal now would be inconsistent with conversion in the prior motion.

The U.S. Trustee has consistently said the Debtors should not be granted relief under any chapter "unless their non-exempt assets and their disposable income are first used to satisfy their unsecured debts." In a nutshell, the Debtors' and the U.S. Trustee's positions are:

| Debtor | U. S. Trustee |
|---|---|
| • The U.S. Trustee put them into chapter 7.<br><br>• Taking them out of chapter 7 would somehow deprive them of bankruptcy protection. | • The Debtors should not have been in chapter 11 and chose to have the case converted rather than dismissed.<br><br>• While dismissal would have been appropriate, conversion permitted a trustee to investigate whether there were assets to administer before dismissal. |

Contrary to the Debtors' argument, the U.S. Trustee didn't merely ask the Court to convert the case. The U.S. Trustee asked for dismissal or conversion. It was actually the Debtors who made the choice. At the hearing on the Motion to Convert or Dismiss, the Debtors told the Court they didn't oppose conversion. Effectively, they communicated they opposed dismissal and consented to conversion. They could have opposed the motion in its entirety or

6

could have agreed to dismissal. They now dislike the consequences of the choice they made. The U.S. Trustee did not take clearly inconsistent positions.

### 2. Whether the Court Was Misled

The parties did not litigate the prior motion to the point of a decision on a contested motion. Although they filed an initial objection, the Debtors changed their position at the hearing and withdrew their objection to conversion. By accepting the conversion that Debtors agreed to, the U.S. Trustee did not state that dismissal would not be proper or that it might not be sought in the future. The current motion to dismiss does not create the perception of misleading the Court. The U.S. Trustee has been consistent in taking the position that dismissal was and is proper. In seeking conversion as one alternative, it said the case should be converted to chapter 7 "so that a trustee can administer any available assets." There turned out to be no available assets. It is not inconsistent or misleading to now renew a request for dismissal upon the finding of abuse.

### 3. Unfair Advantage or Unfair Detriment on Debtors

The Debtors' position is that because the U.S. Trustee filed the motion that resulted in conversion to chapter 7, it is barred from filing a motion to dismiss regardless of what cause or abuse exists. This argument is not persuasive. The Debtors will be able to re-file a case. Depending on their income and expenses, they may or may not be eligible for chapter 7 relief. Depending on the amount of unsecured debt, options other than chapter 7 might be a chapter 13 or a chapter 11. The fact that re-filing may cost them

7

time and money does not change the analysis—they were the ones who filed their case when they were apparently not ready to proceed, having instead to reconstruct financial data and amend their tax returns. Further, they chose to file in a chapter in which they were not eligible for relief while understanding they would not have been eligible for a chapter 7 based on all of their initial filings. Denying the motion to dismiss when the facts, viewed separately from prior procedural history, would clearly establish abuse may encourage debtors to try to game the system and result in relief under chapter 7 that was never contemplated by the Code. Therefore, judicial estoppel should not prevent the filing of a motion to dismiss under the facts in this case.

    C.    <u>Section 707(b) Applies to This Case</u>

Section 707(b) of the Code allows the court to dismiss

> [A] case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). The key phrase here is "a case filed by an individual debtor under this chapter." The parties disagree over what this phrase means. The two possibilities are that it means: 1) "case filed [under this chapter] by an individual debtor," or 2) "case filed by an individual debtor that is currently under this chapter." The Debtors argue for the former approach, while the U.S. Trustee argues for the latter.

Courts are split on the issue of 707(b) applying to converted cases. The majority of courts conclude that "filed" in section 707(b) modifies "by an

8

individual debtor," not "under this chapter." *See Advanced Control Solutions, Inc. v. Justice*, 639 F.3d 838, 840 (8th Cir. 2011) (finding that section 707(b) "applies with equal force to bankruptcy proceedings that commenced under Chapter 7 as with those converted"); *Fokkena v. Chapman (In re Chapman)*, 447 B.R. 250, 253 (B.A.P. 8th Cir. 2011); *In re Kellett*, 379 B.R. 332, 339 (Bankr. D. Or. 2007) (section 707(b) "must be interpreted to encompass cases converted to chapter 7 from other chapters as well as cases filed originally in chapter 7"); *In re Willis*, 408 B.R. 803, 810 (Bankr. W.D. Mo. 2009).

In *Resendez v. Lindquist*, the Eighth Circuit ruled that when there is a conversion to chapter 7, the debtors are deemed to have filed the case under chapter 7 at the time that the case was originally filed under chapter 13, pursuant to 11 U.S.C. § 348(a). *Resendez v. Lindquist*, 691 F.2d 397, 399 (8th Cir. 1982). The Eighth Circuit later used this reasoning to conclude that section 707(b) applies to cases that were originally filed under another chapter and converted to chapter 7. *In re Chapman*, 447 B.R. at 253; *Advanced Control Solutions, Inc. v. Justice*, 639 F.3d at 840.

A few courts have held that section 707(b) does not apply to converted cases. *See In re Guarin*, 2009 WL 4500476, at *1 (Bankr. D. Mass. 2009) (holding that the means test established by section 707(b) does not apply to converted cases); *McDow v. Dudley (In re Dudley)*, 405 B.R. 790, 801 (Bankr. W.D. Va. 2009); *In re Miller*, 381 B.R. 736, 741 (Bankr. W.D. Ark. 2008). These cases hold that the case must be originally filed under chapter 7 for section 707(b) to apply.

9

There is also a major policy concern in play. If section 707(b) did not apply to a case unless the case was originally filed under chapter 7, that would open a huge loophole for debtors to simply file their case in chapter 13 or 11, convert to chapter 7, and then be immune from dismissal under section 707(b). In interpreting the statute, courts "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States*, 494 U.S. 152, 158, 110 S. Ct. 997, 108 L. Ed. 2d 132 (1990). Based upon the other dismissal sections in the Code specifically exempting certain converted cases, the obvious policy concerns, and section 348(a) dictating that a converted case is deemed filed under the converted chapter, the Court finds that section 707(b) applies in this case.

    D.    <u>Abuse Warranting Dismissal Under Section 707(b)</u>

Section 707(b) of the Code allows the court to dismiss

> [A] case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.

11 U.S.C. § 707(b)(1). A presumption of abuse arises if the debtor's current income, reduced by certain amounts, and multiplied by 60 is greater than the lesser of: (I) 25% of the debtor's nonpriority unsecured claims or $7,475, whichever is greater, or (II) $12,475. 11 U.S.C. § 707(b)(2)(A). This presumption may be rebutted by demonstrating special circumstances. 11 U.S.C. § 707(b)(2)(B). When considering whether granting relief would be an abuse of the chapter in a case where the presumption of abuse either does not arise or

10

is rebutted, the Court shall consider whether the debtor filed the petition in bad faith, or the totality of the circumstances demonstrates abuse. 11 U.S.C. § 707(b)(3).

### 1. Presumption of Abuse

Section 707(b)(2) sets out a test which creates a presumption of abuse if the debtor's income passes a certain threshold. *In re Nockerts*, 357 B.R. 497, 499 (Bankr. E.D. Wis. 2006). The means test from section 707(b)(2) is calculated on Official Form 22A. The form initially drafted by the Debtors listed monthly income of $16,264.55. A later form shows monthly income of $14,179.52. The monthly expenses have varied from $7,339.87 to $20,107.91, depending on the form and date. The expenses include $4,248.88 related to the Cumberland house. As noted, the Debtors haven't made any payments on the property in more than a year.

The Debtors' income exceeded expenses in the first papers filed. The deletion of the Cumberland house expenses would have made the Debtors' income exceed their expenses in all but the most recent iteration of income and expenses. The presumption of abuse applies in this case based on the Court's review of all of the schedules filed by the Debtors.

### 2. Totality of the Circumstances

Even without the presumption of abuse, the Court could still dismiss the case for abuse if the totality of the circumstances warrants dismissal. 11 U.S.C. § 707(b)(3). This section allows the Court to examine reasons for dismissal other than the presumption. *In re Lorenca*, 422 B.R. 665, 668 (Bankr.

11

N.D. Ill. 2010). The most relevant factor is the debtor's ability to pay, but the court must also consider

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment; (2) whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; (3) whether the debtor's proposed family budget is excessive or unreasonable; and (4) whether the debtor's schedules and statements of current income and expenses reasonably and accurately reflect the true financial condition.

*Id.* at 669. An important consideration is whether debtors have enough income to "repay a substantial portion of their debt." *Id.* A court can find abuse when there is evidence "that the Debtor has manipulated the means test, purchased luxuries on credit on the eve of bankruptcy, altered his expenses in his Schedules, accrued significant debt prior to the petition, or that his budget is excessive or unreasonable." *Id.* at 670. Other relevant factors include whether expenses can be reduced significantly without depriving debtors of necessities or whether debtors have a stable source of income. These determinations are made on a case-by-case basis, and require a more subjective, holistic approach. *Id.*

The presence of the separate provision for dismissal based upon a finding of bad faith shows that bad faith is not necessary for a dismissal under the totality provision. *Id.* at 671. Dismissal could be based "solely on ability to pay and without, for example, proof of misconduct on the debtor's part." *Id.* (citing *In re Perelman*, 419 B.R. 168, 177 (Bankr. E.D.N.Y. 2009). Other courts have established a stricter standard. *See In re Nockerts*, 357 B.R. at 506–08 (holding that "more than the ability to fund a chapter 13 plan" must be shown to

12

dismiss a case under section 707(b)(3)(B)). However, *Nockerts* seems to be in the minority. *See In re Jensen*, 407 B.R. 378, 383 (Bankr. C.D. Cal. 2009) (noting that the "majority of courts and commentators" disagree with *Nockerts*). Nevertheless, the court in *In re Roll* held that the *Nockerts* conclusion was sound—that ability to pay alone is insufficient. *In re Roll*, 400 B.R. 674, 679 (Bankr. W.D. Wis. 2008). The district court has ruled otherwise. *See In re Herbst*, 95 B.R. 98, 101 (W.D. Wis. 1988) (finding in a pre-BAPCPA case that "in the absence of any additional facts a finding of substantial abuse may be supported solely by the ability to repay"). The Seventh Circuit has not addressed this issue.

  The U.S. Trustee lists several circumstances that he believes weigh in the favor of a finding of abuse. He asserts that the Debtors did not accurately schedule their retirement contributions, have engaged in excessive consumer spending, did not suffer any pre-filing calamity, have a stable source of relatively high income, are eligible for relief under a different chapter, and have the ability to repay their creditors. The Debtors, of course, deny that the totality of the circumstances warrants abuse.

  The most important factor is the ability to pay. The Debtors' chapter 11 schedules showed a monthly surplus of $2,978.41. This figure, while high enough to support payments, could have been even higher because two deductions—$5,000 a month for taxes and $1,075 for retirement contributions—may be overstated. The Debtors admit they are able to make meaningful

13

payments on their tax debt, but argue that dismissing the case would put their ability to make those payments in jeopardy.

The primary drivers of the Form 22A deficit of almost $6,000 a month are previously unlisted or now increased expenses—their Schedule J listed expenses of $7,339.87, while deductions from income on the recent Form 22A have ballooned to $20,107.91. An increase of almost three times does not seem entirely realistic or reasonable. The Debtors have high and relatively stable income and should be able to make payments on their debts with better money management, which leads the Court to the other factors.

The Debtors' relatively high income could support payments to unsecured creditors. Assuming the schedules, the operating reports, and the Statement of Current Monthly Income—all signed under penalty of perjury—were accurate, there has been an almost threefold increase in expenses in less than a year. This would be "only" approximately a doubling of expenses if we deduct the Cumberland house payments. The Debtors defend the increased expenses, claiming the horses are "an integral part of the debtors' domestic life," and that the other expenses were for vehicle repair, travel expenses, advanced rent, traffic fines, medical expenses, and "other innocuous outlays."

The Debtors' expenses are unreasonable. Their expenses break down as follows: $8,869 in expenses allowed under IRS standards, including $4,034.84 per month for taxes; $2,128.93 for additional section 707(b) expenses; $2,035.93 in monthly health or disability insurance premiums; and $9,109.08

14

per month for debt payments. This includes $4,248.88 in future payments for the Cumberland house, and $354.07 in cure payments for that house. Since they haven't made and don't intend to make payments on the Cumberland house, including those is not justifiable. It includes payments on four vehicles and a horse trailer, even though the Debtors acknowledge one vehicle has been repossessed. They include $2,289.14 per month in payments on priority claims—likely their tax liability. However, they already listed $4,034.84 per month in tax payments in a different section and have not made payments on the priority taxes or debts contained in the budget. The enormous increase in expenses on the most recent schedules are overstated and doubtful.

    The U.S. Trustee also points out the Debtors have not accurately scheduled their income and expenses in another way. Specifically, the U.S. Trustee focuses on the retirement plan contributions scheduled at $1,075 per month. The listing on Schedule I does not match up with a corresponding plan on Schedule B. The Debtors say the retirement contributions are only on the budget as a preliminary matter because they were not sure if they would set up retirement accounts or not (they did not). The Debtors did not amend their schedules to reflect this.

    There was no "pre-filing calamity." There is no indication the Debtors were forced to file the case by any "illness, accident, unemployment, or disability." The case appears to be an elective filing. The Debtors do not address this factor.

The Debtors did not have to file because of some event out of their control. There are discrepancies between their schedules and their Form 22A. They claim enormous expenses, some of which could certainly be diminished or eliminated, allowing room for payments. The Debtors could not have filed a chapter 7 originally. The means test required they file a case (chapter 13 or 11) that would make at least some repayment to creditors. Being ineligible for a chapter 7, they filed a chapter 13 only to convert to a chapter 11 because they were ineligible for a chapter 13. They spent their considerable monthly income without any effort to make any payments to anyone. When faced with a Motion to Convert or Dismiss, they made no effort to stay in chapter 11. They did oppose dismissal, but not conversion. Therefore, there are grounds to conclude there is abuse based on the totality of the circumstances under section 707(b)(3).

## Conclusion

The Debtors have not rebutted the presumption of abuse contained in section 707(b)(2) or the factors constituting abuse under section 707(b)(3). For these reasons, the case is dismissed for abuse.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: February 12, 2016

BY THE COURT:

_____
Catherine J. Furay
U.S. Bankruptcy Judge